IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KLAMATH SISKIYOU WILDLANDS
CENTER, et al.,

Civil No. 06-1604-CL

    Plaintiffs,

REPORT AND RECOMMENDATION

    v.

UNITED STATES FOREST
SERVICE,

    Defendant.

CLARKE, Magistrate Judge:

    Plaintiffs Klamath Siskiyou Wildlands Center and Oregon Wild(Plaintiffs) bring this action for declaratory and injunctive relief against the United States Forest Service (Forest Service) alleging that the Forest Service violated the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 et seq., and its implementing regulations, 40 C.F.R. §§ 1500-

1508, by failing to assess significant changed circumstances and new information relating to the Low Meadow Timber Sale on the Rogue-Siskiyou National Forest (RSNF) in Oregon and failing to prepare a new Environmental Impact Statement (EIS) or a Supplemental Environmental Impact Statement (SEIS) before proceeding with the sale.

Plaintiffs move to file a second amended complaint(#25). Defendants, prior to plaintiffs' motion to amend, moved for judgment on the pleadings (#16) on plaintiff's first and second claims. Since the court recommends granting plaintiffs' motion to amend (#25), the court will apply defendant's motion for judgment on pleadings to the proposed second amended complaint and construe it as a motion to dismiss for lack of jurisdiction.

## I. **FACTS**

The following facts paraphrase plaintiffs' proposed second amended complaint:

Plaintiffs seek a declaration that the Forest Service violated federal law by failing to analyze and disclose to the public the environmental effects of significant changed circumstances and new information relating to the Low Meadow Timber Sale on the RSNF and by failing to act consistently with the survey and manage requirements of the Northwest Forest Plan (NWFP). (Proposed Second Amended Complaint ¶1).

2 - REPORT AND RECOMMENDATION

Plaintiffs allege that Forest Service violated NEPA by failing to prepare a new EIS or SEIS to address changed circumstances and new information relevant to the Low Meadow Timber Sale. (Id. at ¶3). Plaintiffs also allege the Forest Service has violated the consistency provision of the National Forest Management Act (NFMA), because the Low Meadow Timber Sale is not consistent with the current survey and manage requirements. (Id.).

In 1996, the Chetco Ranger District in the RSNF completed the original Environmental Assessment (EA), Decision Notice, and Finding of No Significant Impact (FONSI) for the Upper Chetco Timber Sale and the Upper Chetco Meadow Restoration Project. (Id. at ¶27). The EA included authorization for the Low Meadow Timber Sale. (Id. at ¶28).

In 1997, the Forest Service completed a Supplemental EA (SEA) and issued a new Decision Notice and FONSI based on the SEA. (Id. at ¶29). The Low Meadow portion of the Upper Chetco Meadow Restoration SEA identified 150 acres for clear-cutting. (Id. at ¶30). The Low Meadow Timber Sale is located in an Inventoried Roadless Area (IRA), designated Northern Spotted Owl critical habitat, North Chetco Late-Successional Reserve (LSR), key watershed, and recommended Chetco Wild and Scenic River corridor. Riparian Reserves are located in or adjacent to the planning area. (Id. at ¶31). Although the

3 - REPORT AND RECOMMENDATION

Forest Service awarded the Low Meadow Timber Sale in 1997, logging has not yet commenced. (Id. at ¶32).

In the ten years since the EA and the nine years since the SEA, the following circumstances have changed and new information uncovered:

a. In September 2004, the Sustainable Ecosystem Institute prepared the Scientific Evaluation of the Status of the Northern Spotted Owl as part of the status review process required by the Endangered Species Act;

b. In September 2005, the Fish and Wildlife Service prepared the Northwest Forest Plan Status Report on the Spotted Owl as part of the status review process required by the Endangered Species Act;

c. In 2002, the Biscuit Fire burned through the Low Meadow planning area and proposed harvest units;

d. Due to the Biscuit Fire, the Low Meadow planning area has been invaded by invasive species;

e. In 2005, the Forest Service changed the proposed action, including noxious weed control, changes to the "no cut" buffers, and other changes;

f. In 2004, the Forest Service developed new requirements regarding practices to manage the spread of Port Orford Cedar root disease;

g. In 2001, the Forest Service adopted new requirements for

4 - REPORT AND RECOMMENDATION

survey and manage species;

h. In 2006, the Ninth Circuit reinstated the 2001 requirements to survey and manage for the red tree vole. <u>Klamath Siskiyou Wildlands Center v. Boody</u>, 468 F.3d 549 (9th Cir. 2006);

i. In 2006, the U.S. District Court for the Western District of Washington reinstated the survey and manage requirements for all species protected by the program as of March 22, 2004. <u>Northwest Ecosystem Alliance v. Rey</u>, 2006 WL 44631 (Jan. 56, 2006);

j. The legal standard regarding the purpose and role of spotted owl critical habitat, including the validity of the regulatory definition of "destruction or adverse modification" of critical habitat, has changed, <u>Gifford Pinchot Task Force v. Fish and Wildlife Serv.</u>, 378 F.3d 1059 (9th Cir. 2004);

k. In 2000, the Clinton Administration implemented the Roadless Area Conservation Rule (2000 Roadless Rule), which prohibited timber harvesting in inventoried roadless areas;

l. In 2001, the Bush Administration rescinded the 2000 Roadless Rule, and instated a new rule (2001 Roadless Rule) that would not have protected roadless areas in the same manner as the 2000 Rule;

m. In 2006, the District Court of the Northern District of California invalidated the 2001 Roadless Rule and reinstated the 2000 Roadless Rule. <u>Cal. ex rel. Lockyer v. United</u>

States Dep't of Agric., 2006 U.S. Dist. LEXIS 72226 (D. Cal. 2006);

n. The Bureau of Land Management is currently engaging in the Western Oregon Plan Revision (WOPR) process. The BLM is considering several alternatives that would eliminate LSRs from BLM land in western Oregon, increasing the importance of LSRs on National Forest lands.

o. The United States Fish and Wildlife Service is currently revising the critical habitat designation for the northern spotted owl, and is drafting a recovery plan for the owl; and

p. In the ten years since the Forest Service initially decided to proceed with the Low Meadow Timber Sale, it is likely that other actions have occurred within the area that would contribute to the cumulative effects of the proposed Low Meadow Timber Sale. (Id. at ¶33).

Plaintiffs's First and Second claims are alternate claims. Both claims allege that: NEPA requires an agency to prepare a supplemental NEPA analysis when "[t]he agency makes substantial changes in the proposed action that are relevant to environmental concerns; or . . . [t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed actions or its impacts." 40 C.F.R. § 1502.9(c)(1). (Id. at ¶35 and ¶39). Events and information including, but not limited to those listed in

6 - REPORT AND RECOMMENDATION

paragraph 33 constitute significant new circumstances or information relevant to environmental concerns regarding the proposed action. (Id. at ¶36 and ¶40).

The first claim for relief alleges that: The Forest Service's Decision Notice to proceed with the Low Meadow Timber Sale and decision not to supplement and to continue to proceed with the Low Meadow Timber Sale, memorialized in a Memo to the Files (April 28, 2005), without analysis and disclosure to the public of the environmental effects of these significant changed circumstances and new information in a new or supplemental EA for the Low Meadow Timber Sale is arbitrary, capricious, and not in accordance with NEPA and must be set aside in accordance with 5 U.S.C. § 706(2)(A). (Id. at ¶37). In the alternative, the second claim for relief alleges that: the Forest Service's failure to prepare a new or supplemental EA for the Low Meadow Timber Sale in light of this new information is agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1). (Id. at ¶41).

Defendants do not challenge plaintiff's third claim for relief.

## II. **LEGAL STANDARDS**

**Rule 15**

Fed.R.Civ.P. 15 governs amendments to the pleadings. It is within the court's discretion to grant or deny leave to

7 - REPORT AND RECOMMENDATION

amend. <u>Acri v. International Ass'n of Machinists</u>, 781 F.2d 1393, 1398 (9th Cir.), <u>cert. denied</u>, 479 U.S. 816, <u>cert. denied</u> 479 U.S. 821 (1986). Leave to amend should be freely given unless the opposing party makes a showing of undue prejudice, bad faith, or dilatory motive on the part of the moving party. <u>See</u> <u>Martinez v. Newport Beach City</u>, 125 F.3d 777, 785 (9th Cir. 1997), overruled on other grounds, <u>Green v. City of Tucson</u>, 255 F.3d 1086 (9th Cir.), <u>cert. dismissed</u>, 533 U.S. 966 (2001). The party opposing the amendment has the burden of demonstrating why leave to amend should not be granted. <u>Genetech Inc. v. Abbott Laboratories</u>, 127 F.R.D. 529, 530-531 (N.D.Cal. 1989)(citations omitted).

"The following factors guide a court's determination of whether a motion to amend should be granted: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party." <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1482 (9th Cir.), <u>cert. denied</u>, 522 U.S. 996 (1997), <u>cert. granted</u>, 524 U.S. 936 (1998), <u>cert. granted and judgment affirmed</u>, 525 U.S. 299 (1999) (citation omitted). Undue delay, by itself may be insufficient to deny a motion to amend, but, when combined with other factors, denial could be proper. <u>Morongo Band of Mission Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1990). "Prejudice to the opposing party is the most important factor." <u>Jackson v. Bank of Hawaii</u>, 902

8 - REPORT AND RECOMMENDATION

F.2d 1385, 1387-1388 (9th Cir. 1990)(citations omitted).

**Rule 12**

"A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3rd Cir. 2000). The defendant makes a facial challenge to jurisdiction.

In a facial challenge to jurisdiction, all the factual allegations concerning jurisdiction are presumed true, and the motion is successful if the plaintiffs fail to allege an element necessary for subject matter jurisdiction. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993)(citation omitted). When jurisdictional challenges are based solely upon the complaint, the complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim. Hanford Downwinders Coalition, Inc. v. Dowdle, 841 F.Supp. 1050, 1056 (E.D.Wash. 1993), affirmed, 71 F.3d 1469 (9th Cir. 1995), affirmed, 76 F.3d 385 (9th Cir. 1996).

The party asserting jurisdiction bears the burden of establishing jurisdiction. Dowdle, 841 F.Supp. at 1057 (citation and quotations omitted). It is presumed that the federal court lacks jurisdiction until it is established. Kokkonen v. Guardian Life Ins. Co. of America, 511 US 375, 377

(1994); <u>La Reunion Francaise SA v. Barnes</u>, 247 F.3d 1022, 1026 (9th Cir. 2001).

### III. DISCUSSION

**Motion to Amend**

Plaintiffs move to file a second amended complaint to: 1) add allegations regarding more significant changed circumstances and new information to ¶33, including more information on the environmental effects of the Biscuit Fire and information on the legal requirements for survey and manage species that apply to the Low Meadow Timber Sale; 2) add the April 28, 2005 Memo to File, which reaffirms the 1997 Decision Notice as part of their First Claim; and 3) to add a third claim for violation of the National Forest Management Act consistency provision because it appears that the only surveys completed in 1997 do not comply with the current requirements for survey and manage species  seeking to add a claim for pre-judgment interest to the prayer for relief.  In support of their motion, plaintiffs argue that:

1) defendant will not be prejudiced if the complaint is amended as the amendments are based upon the same nucleus of facts as the First Amended Complaint;

2) the case is in early stages of litigation and is therefore timely; and

3) plaintiffs' motion is made in good faith as plaintiffs had

to substitute counsel and upon review of the motion for judgment on the pleadings and the case file, new counsel identified the three primary additions to the complaint identified above.

In opposition, defendant argues that:

1) plaintiffs' motion to amend is untimely as it is not based upon newly discovered facts - the Memo to File is dated April 28, 2005 and the information regarding survey and manage species became known in two court decisions issued November 6, 2006 and January 9, 2006 respectively;

2) plaintiffs have failed to offer a plausible reason for their failure to include these facts and claim in their prior complaint;

3) plaintiffs' substitution of counsel does not justify their delay;

4) defendant would be prejudiced by the amendment as the Forest Service has already entered into a contract for the operation of the project and operations are set to begin later this summer;

5) defendant will also be prejudiced as its motion for judgment on the pleadings is almost fully briefed and plaintiffs should not be allowed to "change course at this late date by adding facts and theories that were available before they filed their original and First Amended Complaints.

11 - REPORT AND RECOMMENDATION

In reply, plaintiffs argue that:

1) the defendant is not prejudiced by the amendment and the case relied upon by the defendant are distinguishable from this case;

2) none of the case relied upon by defendant disallowed amendment based solely on the fact that plaintiff knew or should have known of the cause of action when the original complaint was filed;

3) the timber sale contract at issue has been in place since 1997 and the most recent contract was in place prior to the original complaint being filed, therefore, noting has changed between the time the original complaint was filed and the filing of the motion to amend;

4) the contract also contains a provision which allows the Forest Service to terminate the contract or suspend or modify the contract to prevent environmental degradation or resource damage, conduct environmental analysis or ensure consistency with NEPA documents - granting the motion to amend will not alter the Forest Service's position with regard to the contract;

5) if leave to amend is granted, the full merits of the case may be reached by the time the project is suppose to occur;

6) the contract also allows the Forest Service to delay or interrupt operations due to appeals or litigation;

12 - REPORT AND RECOMMENDATION

7) Rule 15 favors leave to amend when justice so requires and it is in the interests of justice that the full merits of the case be heard and it is in the public interest that the NEPA claims be decided; and

8) the passage of two months between substituting counsel and filing the motion to amend is not undue delay - there is no extraordinary delay as in the cases relied upon by defendant.

The court finds that the delay in moving to amend is not extraordinary. Plaintiff's motion to amend is timely. See Owens v. Kaiser Fdn. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001). The contract language, attached as Exhibit 4 to defendant's Motion for Judgment on the Pleadings, allows for delays to accommodate further environmental analysis or litigation and, therefore, the amendments will not unduly prejudice the defendant. Defendants have failed to show that they would be prejudiced by this amendment. In addition, the motion to amend was filed before the discovery deadline.

The court finds that the factors weigh in favor of granting plaintiffs' leave to amend. In addition, the court finds that it is in the interest of justice, judicial economy, and the public interest to allow the plaintiffs to amend their complaint.

**Motion to Dismiss**

Defendants argue that the court lacks subject matter jurisdiction over plaintiffs' first and second claims for relief as:

1) plaintiffs' have failed to challenge any final action;

2) plaintiffs have failed to identify any remaining major federal action with regards to the challenged timber sale supplementation of an EA is required only if there remains major federal action to occur - the Forest Service does not have an obligation to supplement the Low Meadow Timber Sale project, citing Norton v. Southern Utah Wilderness Alliance (SUWA), 542 U.S. 55, 73 (2004) and Cold Mountain v. Garber, 375 F.3d 884, 894 (9th Cir. 2004); and

3) plaintiffs' claims against the 1997 Decision Notice and FONSI are barred by NEPA's six year statute of limitations.

In response, plaintiffs argue that:

1) plaintiffs challenge under §706(2)(A) is supported by Marsh;

2) plaintiffs have challenged final agency action in the form of the 1997 Decision Notice which was reaffirmed by the 2005 Memo to File;

3) the statute of limitations does not begin to run until the significant information and changed circumstances arise;

4) plaintiffs are not challenging a Forest Service program;

14 - REPORT AND RECOMMENDATION

5) plaintiffs have properly challenged the Forest Service's failure to act pursuant to §706(1) - the Forest Service has a mandatory duty to supplement its environmental analysis pursuant to NEPA;

6) the Low Meadow Timber Sale meets the Marsh test as there is major federal action yet to occur - logging;

7) SUWA does not overrule Marsh and is not applicable to this case and Cold Mountain is distinguishable from this case; and

8) the Forest Service's own handbook demonstrates that supplementation is required.

In reply defendant argues that:

1) the court lacks jurisdiction over plaintiffs' first claim for relief as plaintiffs have failed to identify any reviewable final agency action within the statute of limitations;

2) the continuing claims doctrine does not apply to NEPA claims;

3) plaintiffs have failed to allege the relevant agency action related to their failure to supplement claim that occurred within the last six years; and

4) plaintiffs' failure to act claim should be dismissed under SUWA and Cold Mountain as there is no remaining federal action.

15 - REPORT AND RECOMMENDATION

The court finds that plaintiffs have identified a final agency decision within the last six years in their proposed second amended complaint. Plaintiffs allege that in a Memo to File dated April 28, 2005, the Forest Service made the decision not to supplement the 1997 SEA and to continue to proceed with the Low Meadow Timber Sale. In addition, plaintiffs have identified new information that has come into existence before the timber sale could be completed. The Forest Service has a continuing duty under NEPA to examine significant new circumstances and determine if supplementation is required. 40 C.F.R. §1502.9(c)(1)(ii). Therefore, the statute of limitations does not bar plaintiffs' claims.

The court finds that SUWA is not on point. In SUWA, the BLM approved a land use plan. Later, an action was brought to compel the BLM to prepare an SEIS, citing an increase in off-road vehicle usage. The Court held that supplementation was not necessary, because the only federal action at issue was completed when the land use plan was approved. Id. at 73. The Court emphasized that the land use plan was "generally a statement of priorities" that "guides and constrains actions" but does not ordinarily "prescribe them," Id. at 71, and which document is "normally not used to make site-specific implementation decisions." Id. at 70. Rather, any specific project would be the subject of a more focused process. SUWA

16 - REPORT AND RECOMMENDATION

contrasted that general planning document to the partly-completed dam in Marsh, 490 U.S. 360 (1989), which was subject to the SEIS regulation. "In Marsh, that condition [--that there remains major Federal action to occur--] was met: the dam construction project that gave rise to environmental review was not yet completed." SUWA, 542 U.S. at 73.

In Cold Mountain, the Forest Service issued a ten-year permit to a state agency that sought to operate a bison capture facility. The Complaint seeking an SEIS was not commenced until two years later. By then, the only federal action (issuance of the permit) had long since been completed. Id. at 894.

In this case, the challenged timber sale at issue falls under Marsh. The Decision Notice and FONSI are not mere general planning documents that were complete when the forest plan was finalized, but instead authorized site-specific projects that have yet to be consummated. The Forest Service made an additional decision in April 2005 when it determined that supplementation of the 1997 SEA was unnecessary.

The court also finds that Marsh also controls with regard to plaintiffs' first claim for relief. In Marsh, the court found that "review of the narrow question before us whether the Corps' determination that the FEISS need not be supplemented should be set aside is controlled by the

17 - REPORT AND RECOMMENDATION

"arbitrary and capricious" standard of § 706(2)(A)." This authority supports plaintiffs' argument that they may proceed with their claims under both §706(1) and §706(2)(A).

A federal agency must prepare an SEIS when "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1)(ii). In this case plaintiffs have pleaded specific changed circumstances and new information and allege that these require a SEA. Plaintiffs have alleged that in April 2005, the Forest Service decided supplementation of the 1997 SEA was not required. At the pleading stage plaintiffs' complaint states a claim for requiring an agency to prepare a SEA. Therefore, plaintiffs' claims should not be dismissed.

## IV. RECOMMENDATION

Based on the foregoing, it is recommended that plaintiff's motion to amend (#25) be granted and defendant's motion for judgment on the pleadings (#16) be denied.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due on June 5, 2007.*

*If objections are filed, any responses to the objections are due 14 days after the objections are filed*. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 21 day of May, 2007.

_____
UNITED STATES MAGISTRATE JUDGE